061573, Re Icon Health and Fitness. Mr. Laycock. Your Honors, may it please the court. I'm Larry Laycock, the workman at Niagara Floor. I'm appearing on behalf of Icon Health and Fitness. In this particular matter, the governing authorities, in combination with the facts, make it clear that the board's affirmation of the examiner's rejection should be reversed. For at least three independent reasons. Principally, Teague does not, or Teague reference does not disclose gas springs that exert the required force of claim one. The board in this particular matter heard when it concluded that the claim does not limit the degree or the manner in which the gas spring assists in stably retaining the tread base at the storage position. So your application is about retaining the stable post position. Relative to the upright structure, Your Honor. That's what they read out of the claim, and that's the point they miss in determining that pretty much any exerted force will do. But accepting that, why would it nonetheless be obvious for one skilled in the area to take the mechanism in Teague and modify it and just use the spring? Three independent reasons. First, Your Honor, the spring in Teague serves to perform a completely separate and distinct function. As you recall, in Teague, which is a very complicated linkage mechanism, you have a situation where the gas spring actually exerts a force for assisting in lifting the bed, which, of course, is somewhat consistent with the idea of lifting a tread base. However, where it departs is when the center of gravity for the Teague bed reaches the point of axis, the linkage in that mechanism shifts, and at that point, at the point of axis where the center of gravity of the bed reaches that point, the linkage shifts the position of that spring such that it exerts an opposite force. Now, it is asserted that that force is somehow asserting a force relative to gravity, but that's not what the claim says. And that's where the error really lies, because really, the element of dispute here from claim one is that you must have not just stably retaining the tread base, but it must be stably retaining the tread base relative to the upright structure. And so at this point, it functions for the purpose in Teague, that gas spring functions for the purpose of actually forcing the bed away from the wall, it cushions the movement such that it's actually forcing it in the opposite direction intended by the claim, and the claim is very clear. It says that that force must be relative to said upright structure, and it must have the force exerted in that manner. And that has been ignored, and ignoring that function is where the board erred, because you cannot conclude that the claim does not limit the degree and manner in which the gas spring assists. Let me ask you, the language is to assist in stably retaining, and then it goes on to what you've talked about. Now, as far as I can tell, I think you have accurately described the action of the Teague Murphy bed, I guess, that we're all familiar with. That's a commentary I should describe, yes. But isn't it not the case that even though what you said is true about, you know, mechanically and physically how it works, nevertheless, is it not the case that through the action of the spring, the Teague bed is assisting in the way required by the claim? Assisting in stable retention, not in lifting, that's another point of confusion. Because if you consider this claim in the context of just simply being a lift-assist mechanism, that's not the comparison that must be made. I guess what I'm saying is, isn't what you just described when we were having a discussion with Judge Post, isn't that really assisting in the stable retention? You know, it's doing it a certain way. It isn't, Your Honour, for two reasons. One, it's pushing... If you were to take, for example, the Teague or the Murphy bed, as you've indicated, mechanism, which is too complicated for the purposes of a tread base in any event, especially the Damark reference. If you put it in there, the force exerted in the Teague reference would actually force the tread base into the use position rather than the storage position. There would be no stable retaining. Secondly, the force that's actually at play in the Teague reference is a force opposite that required by the claim, and therefore teaches clearly away from what is the objective of the claim for this reason. And this is where the confusion really lies. If you think about it, there are two forces that are required to retain. And we speak of the word retain in the sense of holding in place, as all the definitions would indicate. The forces that are required to retain something, especially something that is pivoted, and in this case, one force has to be... You have to have a force in both directions. In other words, you have to have opposite forces. In this case, the PTO's argument shows that it ignores the claim requirement that the gas spring must assist in stable retaining relative to the upright structure. In fact, the forces of Teague work with the upright structure to push into the use position. And you recall the claim requires that the force be relative to that upright structure or the storage position, so it's an exact opposite force, which leads to the second independent basis for overturning the obviousness determination, and that is that the board erred in rejecting claim one because the Teague reference clearly teaches away from the claims at issue. Here, Teague teaches that those springs, as we've indicated, work to push the bed away from the wall. Now, it was suggested... Yeah, but I have some difficulty with that. Even pre-KSR and PNSR also gives us some instruction on teaching the way and how limited that is, how restrictive that is. But it seems to me Teague offered an improvement over a traditional mechanism, but that doesn't mean that... But I'm having a hard time seeing how that's sufficient to establish a teaching away. Well, it teaches away for the reason that the springs are actually performing a different function than that contemplated by the claim. The claim requires that that force be exerted relative to the upright structure. And if you examine the Teague reference at any of the relevant portions of that reference, you can go to A286, 287, or 298, in each reference at column two of the Teague reference, it teaches that when the bed continues to move toward the fully closed position, which would be the upright structure, the springs reverse their action. And every teaching of Teague is consistent with that at column four. Yeah, but as far as the teaching away, it doesn't indicate that if not doing that, it would not be functional. Actually, it would if you took the Teague mechanism and you put that into Damark, which are the two references sought to be combined for this obviousness analysis. It would actually, because of the relative weight of the tread base in a Damark simple treadmill tread base, it would actually force that tread base down into its used position and not assist in any way in stable retention of that particular tread base in a storage position. And really what the problem that occurs there on the teaching away is that, you know, here what is sought by the board is if you take the reference in combination and you produce a seemingly operative device, but this court has consistently held that such references teach away from the combination and cannot serve as predicates for a prima facie case of obviousness, where you do not rely on the entire reference at issue. In other words, it is not sufficient to simply pick and choose from among the disclosures of Teague in this case, for the purpose of making the determination of obviousness. This court made clear in the Westlap decision that it is impermissible within the framework of section 103 to pick and choose from any one reference, only so much of it as will support a given position. In this case, the board simply selected the upward movement until you get to the point of access and then ignored the forces that teach away in the sense that they are moving the bed, in this case of the Teague reference, away from the wall. And in that context, this court has consistently concluded that you must as a necessity consider all of the other parts to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art. Moreover, the district court has also, in the Bosch and Blum decision, determined that if the court fails to consider the entirety of the reference in that particular case, if one of the references or if part of its teaching was ignored, it was found to be a case against an obviousness finding. And so in this circumstance, once you get to that point of access where that gas spring is acting absolutely contrary to the requirements of the claim, under the circumstances of this case, it is not only insufficient to disclose what is necessary to the claim, but it also teaches away, which leads to the final point, which is in this particular case, the Teague and Damark combination would be completely unsatisfactory for the invention's intended purpose. And I've already mentioned, of course, the issue of the inapplicability of this complicated mechanism in the Damark reference. If you want to say in your rebuttal that you're already at your end, then you can, but you don't. For all of these reasons, your honors, we would urge the court to overturn the court's determination and reverse. May it please the court. The key starting point for this case is, what does Claim 1 require? He's talking about Claim 1 requires a particular force. Claim 1, as the warden directly found, is very broad. All that claim says is, it's reprinted in the facing inside of a cup. It's a gas spring. It's a gas spring to assist in stably retaining the tread base in its closed position. It doesn't say a particular type of gas spring, and it certainly doesn't require a particular type of force. As the board said, there is no limitation here in Claim 1 as to the particular method or manner or degree to which that gas spring, quote, assists in stable retention. So, accepting that premise, because of course, claims even in re-examination get their broadest reasonable interpretation, there's no reason here to believe that, based on the evidence, T's gas spring doesn't teach that particular case. But the spring in T pushes against the closed direction. The way that is closed, right? Well, the way the gas spring in T works, and this is very important here, because they're misrepresenting how that spring works. I think the starting point for what the spring in T does has got to be page A296, which is in the T reference, at column one, line 35 to 42, which explicitly teaches that its gas spring seeks to create a stable, closed position. Now, the way it does that, and as the board found, the way it does that is, I mean, a crude demonstration, if this is their Murphy bed, the gas spring pushes the bed towards the wall to a certain point where the center of gravity of the bed reaches its pivot axis. At that point, it is true, the gas spring is not pushing the bed towards the wall. Rather, what it does is, it begins to cushion the movement of the bed. But that bed continues to move towards the wall. The degree of force, if you think of it as sort of a reverse force, what it's doing is, it's slowing down the momentum of the bed, because at this point, gravity and momentum are carrying that bed towards the wall. As the board found, without the gas spring in T, that bed goes past its stable position. The key point is the language, I guess, at the top of the commentaries is, the springs reverse their action and act against that continued movement, that continued movement being the movement towards the wall. That's correct. Now, what happens is, the spring does compression. So, it is pushing against the bed, but not so much that, and there is nothing in T to suggest that it does, that it's actually pushing the bed backwards to a closed position. That would be completely counter to T's explicit teaching that the springs, in part, seek to create a stable, closed position. And I think if you look at the key disclosure here in T, as to how the springs function in reaching that stable, closed position, for example, if you look at paragraph, column four, at page 297, starting about lines eight through 25, it makes it very clear that the bed here, once the spring begins to, quote, impart that reverse force, the bed continues to move towards the wall. And it has to, because that is its stable, closed position. So, those springs assist in stable retention by helping the bed reach that point. But doesn't the T in column one say that it would be objectionable to use a spring that helps the mechanism close? Well, what it was talking about there was the prior arm springs, which, in fact, worked in the way that Icahn is now trying to read into the claim, which, of course, would be impermissible. The fact that those forces are objectionable really isn't relevant here because we don't have any recitation in claim one as to how the force has to actually function. All that's required by claim one is that the spring assists in stable retention. The springs disposed in T do exactly that by helping to move the bed into the final, closed position where it's gonna stay until the user comes along and says, I wanna open my bed, it's time for me to go to bed. The springs will then assist in that. But until that point comes along, those springs are helping to keep the bed exactly where it should be, 90 degrees from the floor, which, as T defines it, is the stable, closed position. So far from teaching away or rendering it inoperable, what we have is explicit disclosure here that I have a spring that creates a stable, closed position and does it in a particular mechanism. So the board correctly here rejected those arguments, saying you'd have to ignore what T teaches and what your claim requires to overturn this obviousness or render this obviousness decision or rejection improper. Now, as to inoperability, as an initial matter, that's premised on their erroneous understanding of how the T spring works, which is to say it doesn't push the bed back towards the floor. Their argument that if you put that spring on the Danmark reference, which teaches the other portions, the treadmill portions of claim one, would push it back open, that's just a terry argument. As the board explicitly found, we don't have any evidence that once given the argument, looking at this reference, would understand that that spring wouldn't work on Danmark. And in fact, if you look at the explicit disclosures of both the T reference and their own 624 patent, those references explicitly teach to one scale in the art that there's a certain amount of adaptability that has to be applied here to these springs. For example, if you look at their own patent at page A350, column 14, lines 59 to 62, their own patent explicitly indicates that not every user is gonna need this gas spring. It says for some users, you're gonna need a spring that helps with lift assistance. It also says you're going to, at page A349, column 12, lines 45 to 47, you're going to, each individual treadmill is gonna be different. It's gonna have a different size, shape, construction, weight, and in that case, we're talking about the center of gravity, but the point there is, each of these treadmills is different, you're gonna need to vary your parameters to make sure that your list specifics, which includes retention, is accurate for that particular treadmill. And finally, at page-  That's right. Because you're only using, they're saying the spring from T. That's, the board's finding was the spring from T would be the- Right, not the- Assistant. Well, the point, the counterbalancing mechanism, the gas spring, which T makes very clearly, is sort of the key part of the counterbalancing mechanism. So, but it's a particular spring that's really relevant to T. And then, you'd have to modify that. Well, the board didn't, there was no issue as to whether the spring would have to be modified. I'm not asking the board, I'm asking DO. Sure. My point really is in reference to their inoperability argument, which the board addressed at A-22. A-21. There's no evidence in the record that would suggest that one skill in the art would have a reasonable expectation that if you took T's mechanism and put it in the dam on a treadmill, that it wouldn't, quote, assist in stable retention. Whether or not you'd have to modify it, perhaps you would, but these references fairly suggest that that modification would be well within the skill of the art. T itself makes very clear that these gas springs are going to have to be calibrated to a particular bed, at column two of T at the top. What T says is, you're gonna have to adapt. These gas springs are gonna have to be adapted to a particular weight, what queen bed versus a twin versus a king. They're gonna have different bedding and different sizes. So you're gonna have to adjust your gas spring to make sure that it works for the particular bed. So this inoperability argument is contrary to the record evidence and isn't supported by any contrary evidence. So, and as to teaching away for the same reasons that I've discussed before, far from teaching away, T explicitly states, I have a gas spring that creates a stable closed position. That's all, and in fact, that's more than the claim requires. All the claim requires is assists in stable retention. So for the reasons expressed in our brief, the board decision is eminently affirmable and the obviousness objection should be affirmed. The board's decision should be affirmed. If you have any other questions, I'll yield the rest of my time. Thank you. The real question is whether the gas springs described in T satisfy the language of claim one. On three separate occasions in the last 10 minutes, we heard consistently the belief that the claim only requires assistance with stable retention. That is not what the claim says. It ignores the scope of the claim, and this is the error which has been committed here. The board heard when it concluded that the claim does not limit degree or manner in which the gas spring assists. They read out, in order to reach that conclusion, the very language which distinguishes this claim from the prior bar. Namely, the claim does restrict the manner in which the gas spring assists in stable retaining, and that is namely to assist in stable retaining relative to the upright structure, and that is precisely what Teague teaches away from. A careful analysis, and even a cursory reading, would conclude this based on the very references that you've been taken to within the Teague reference. A reference to column two of the Teague reference at 296 indicates when the bed continues to move toward the fully closed positions, the springs reverse their action and act against that continued movement. In other words, they do not act as the claim requires relative to the upright structure, and that phrase within claim one is completely ignored by the board. The action must be relative to the upright structure, and in every instance cited to you, for example, in column four, once again, at column four, at approximately lines 17 through 23, it indicates that further swinging movement of the lever causes the gas springs to be subjected to compression, and they act against and cushion the action of gravity. If anything, the board is making the conclusion that they have a force exerted relative to gravity, but that's not what the claim says. The claim says that it must be a force relative to the upright structure, and that is what is missing in Teague, and that is why Teague cannot satisfy the additional element at issue in this case. In this instance, the combined authorities are wrong in the facts of the case, and the error committed by the board in reading, simply reading out the limitations on the manner in which Staple is assisting in the retention of the upright subject matter is a complete error, and requires reversal of the final law. We urge that resolved. Thank you very much.